# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 29, 2008

135495

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

AMIR AZIZ SHAHIDEH,
      Defendant-Appellee.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 135495
COA: 267961
Oakland CC: 2005-203450-FC

      On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we REVERSE the October 25, 2007 judgment of the Court of Appeals because the defendant waived his right to appellate relief by abandoning his insanity defense. The defendant sought a court order permitting a privately retained psychologist to examine him while he was in jail for the purpose of evaluating the merits of an insanity defense. The trial court denied the defendant's motion, holding that the defendant must first file a notice of intent to assert an insanity defense pursuant to MCL 768.20a(1) before he could obtain an evaluation by his privately retained expert. The Court of Appeals reversed, holding that MCL 768.20a did not apply because "only a defendant who 'plan[s]' or 'intends' to raise the insanity defense at trial must comply with the procedures set forth in MCL 768.20a." *People v Shahideh*, 277 Mich App 111, 116 (2007), quoting *Random House Webster's College Dictionary* (1997) for the definition of "propose."

      The trial court's ruling did not prohibit the defendant from pursuing an insanity defense. The defendant was fully aware that he could file a § 20a(1) notice and continue pursuing an insanity defense. Defense counsel gathered sufficient information through his investigation to form a good-faith basis for filing a notice of intent under MCL 768.20a(1). Instead, the defendant elected to abandon an insanity defense in favor of a mitigation defense. "'[W]aiver is the "intentional relinquishment or abandonment of a known right."'" *People v Carines*, 460 Mich 750, 762 n 7, quoting *United States v Olano*, 507 US 725, 733 (1993). "'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.'" *People v Carter*, 462 Mich 206, 215 (2000), quoting *United*

*States v Griffin*, 84 F3d 912, 924 (CA 7, 1996). Thus, regardless of whether the trial court erred in holding that MCL 768.20a applied, the defendant abandoned the insanity defense and cannot obtain appellate relief because his chosen defense strategy failed. "Counsel may not harbor error as an appellate parachute." *Carter*, *supra* at 214. Accordingly, we REINSTATE the defendant's conviction.

TAYLOR, C.J. (*concurring*).

I have signed the order reversing the Court of Appeals opinion and ruling that defendant waived the issue whether any error occurred. I write separately because the Court of Appeals opinion is published and I wish to explain why I conclude that the Court of Appeals analysis of several issues is erroneous.

The substantive issue in this case is whether an incarcerated defendant has a right to a court order requiring a county sheriff to allow a privately retained psychologist to evaluate the defendant well beyond normal jail visitation hours so defense counsel can decide whether to file a notice of intent under MCL 768.20a to present evidence that the defendant was insane when the crime was committed. The trial court denied defendant's motion for such an order, ruling that under the statute defendant would be entitled to an independent evaluation only after an evaluation by the Center for Forensic Psychiatry. The Court of Appeals, however, held that the statute did not apply to defense counsel's request. It further concluded that the trial court's denial of the request violated defendant's constitutional right to the effective assistance of counsel.

I disagree with the Court of Appeals and would hold that an incarcerated defendant is not entitled to a court order requiring the sheriff to make the defendant available in the jail for a period beyond that allowed by existing jail visitation policies so that the defendant may be examined by a psychologist in order to help defense counsel decide whether a notice of intent under MCL 768.20a should be filed. An incarcerated defendant has no right to an independent evaluation under MCL 768.20a until a notice of intent has been filed, and then only after the defendant is first examined at the forensic center. I also would hold that the denial of defendant's motion did not violate defendant's constitutional right to the effective assistance of counsel.

I. Facts and Proceedings Below

Defendant was charged with first-degree murder, MCL 750.316(1), after he confessed to killing his girlfriend, who was found bludgeoned and stabbed to death. He was held without bond pending trial. While awaiting trial, his privately retained attorney moved for a court order to permit a privately retained psychologist to evaluate defendant in the jail to determine whether it would be appropriate to pursue an insanity defense at trial. Defense counsel explained that a court order was necessary because such an evaluation would take more time than is allowed for visits at the jail.

The prosecutor's office opposed the motion but offered to stipulate to a referral to the forensic center for an insanity examination pursuant to MCL 768.20a. Defense counsel responded that, although defendant had been diagnosed as suffering from bipolar disorder, and had previously been prescribed Prozac, Xanax, and Ritalin, he did not have a basis for filing a notice of insanity defense. Rather, he only had enough information to further investigate a possible insanity defense.

The trial court denied defendant's motion, ruling that MCL 768.20a was applicable and that defendant could only obtain an independent psychiatric examination after filing the statutory notice of intent, and after he had been evaluated at the forensic center. Defense counsel did not file an interlocutory appeal. The case proceeded to trial with the prosecution contending that the killing had been premeditated and with defense counsel arguing that defendant's actions had been impulsive, not premeditated. Defense counsel specifically told the jury that defendant was "not claiming temporary insanity."

During its deliberations, the jury sent a message to the court asking whether defendant would have been able to propose a defense of temporary insanity. The trial court advised the jury to base its decision on the evidence that had been introduced during the trial and on the law as instructed. Thereafter, the jury found defendant guilty of first-degree murder.

Defendant appealed in the Court of Appeals, raising only one issue: whether the trial court's denial of his motion to permit a psychologist to have access to him in the jail for an independent psychological evaluation denied defendant his statutory[1] and constitutional rights.

The Court of Appeals majority concluded that the trial court had erred and remanded the case for further proceedings.[2] In particular, the Court of Appeals held that MCL 768.20a did not apply because a mere request to investigate and examine the viability or feasibility of a potential insanity defense is not sufficient to trigger the statute. The panel also held that the trial court's denial of defendant's motion had violated defendant's constitutional right to the effective assistance of counsel because it had deprived defense counsel of the opportunity to investigate a potential insanity defense.

The dissenting judge, however, agreed with the trial court that MCL 768.20a did apply and that defendant had no right to an independent psychological evaluation before giving notice of an insanity defense and being examined at the forensic center. The

---

[1] On appeal in this Court, defendant has dropped any argument that he had a statutory right to an independent evaluation.

[2] *People v Shahideh*, 277 Mich App 111; 743 NW2d 233 (2007).

dissenter further indicated that, even if the statute did not control, defendant was not deprived of the right to pursue a defense or to have his own expert evaluate his mental condition. This was because defendant's right to pursue an insanity defense would have been satisfied, and he could have obtained an independent evaluation, if he had merely filed a notice of intent pursuant to MCL 768.20a.

The prosecution filed an application for leave to appeal in this Court. We granted leave to appeal and asked the parties to brief

> (a) whether MCL 768.20a governs a request by an incarcerated defendant for an independent psychiatric evaluation to determine whether an insanity defense may be available where no notice of intention to assert an insanity defense has been filed; (b) if the statute governs, whether the subsections of MCL 768.20a are to be construed seriatim, such that an independent psychiatric evaluation may not be requested under subsection 3 without first complying with subsections 1 and 2; and, (c) if the statute does not apply, whether the defendant's constitutional rights were violated by the trial court's decision to deny access to the defendant for an independent psychiatric evaluation while he was in jail.[3]

## II. Standard of Review

Whether MCL 768.20a applied is a question of statutory interpretation. We review de novo questions of statutory interpretation. *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003). Similarly, we review de novo questions of constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

## III. Principles of Statutory Construction

When interpreting a statute, the Court's primary goal is to give effect to the intent of the Legislature. *Brown v Detroit Mayor*, 478 Mich 589, 593; 734 NW2d 514 (2007). The first step is to review the language of the statute. *Id.* If the statute is unambiguous on its face, we presume that the Legislature intended the meaning expressed, and judicial construction is neither required nor permissible. *Id.* It is also the case that "when construing a statute, a court must read it as a whole." *Apsey v Mem Hosp*, 477 Mich 120, 130; 730 NW2d 695 (2007). Specifically, to discover legislative intent, "the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Grand Rapids v Crocker*, 219 Mich 178, 182-183; 189 NW 221 (1922). See also *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001) (provisions must be read in the context of the

---

[3] *People v Shahideh*, 480 Mich 1195 (2008).

entire statute so as to produce a harmonious whole). Likewise, subsections of a statute are not to be read discretely, but as part of a whole. *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 167-168; 680 NW2d 840 (2004).

An undefined statutory term or phrase must be accorded its plain and ordinary meaning. MCL 8.3a;[4] *People v Thompson*, 477 Mich 146, 151; 730 NW2d 708 (2007).[5] A lay dictionary may be consulted to define a common word or phrase that lacks a unique legal meaning. *Id.* at 151-152.

IV. The Insanity Defense

A. Historical Background

Before 1975, the test for determining legal insanity in Michigan was controlled by *People v Durfee*, 62 Mich 487; 29 NW 109 (1886). As was explained in *People v Martin*, 386 Mich 407, 418; 192 NW2d 215 (1971), the "salient elements" of the *Durfee* test were: "1) whether defendant knew what he was doing was right or wrong; and 2) if he did, did he have the power, the will power, to resist doing the wrongful act?" If a defendant was found not guilty by reason of insanity, by statute, he was automatically committed for an indeterminate period to the Department of Mental Health for treatment in an appropriate state hospital. *People v McQuillan*, 392 Mich 511, 518 n 1, 519; 221 NW2d 569 (1974).

However, in 1974 this Court found the automatic-commitment statute unconstitutional. The *McQuillan* Court ordered that all previously committed "not guilty by reason of insanity defendants" were to be evaluated and released if they did not qualify for civil commitment. Thereafter, approximately 150 of the 270 persons[6] who had been committed after having been found not guilty by reason of insanity, whom professionals had determined to be presently sane under *McQuillan*, "were released from

---

[4] MCL 8.3a provides:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

[5] See also MCL 750.2, which provides in part that the provisions of the Michigan Penal Code "shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law."

[6] Smith & Hall, Project, *Evaluating Michigan's guilty but mentally ill verdict: An empirical study*, 16 U Mich J L Ref 77, 82 (1982); Schwartz, *Moving Backward Confidently*, 54 Mich Bar J 847, 848 (1975).

institutions, with tragic results. Two of the released persons soon committed violent crimes."[7]

Also, in 1974, a report was issued suggesting that the insanity verdict had been misused in many cases. As the Court explained:

> A study by the Center for Forensic Psychiatry in September of 1974 indicated that of some 350 persons found not guilty by reason of insanity only twenty percent of them suffered from mental illness sufficient to exculpate their actions. Thirty percent of those persons were found to have no mental illness whatsoever. The remaining fifty percent were viewed as having some psychosis or neurosis, but with no evident relationship between their mental state and their crime. Robey, [*Guilty but mentally ill*, 6 Bull Am Acad Psychiatry Law, 374, 374-375 (1978)]. Of course, a verdict of not guilty by reason of insanity determines a defendant's mental state at the time of the crime, not afterwards. Still, in view of these statistics and the number of persons released after *McQuillan*, and unless treatment of the mentally ill has progressed far beyond the level of which we are aware, one can hardly conclude that the Legislature was irrational in finding the insanity verdict to have been misused. *People v Ramsey,* 422 Mich 500, 512 n 3; 375 NW2d 297 (1985).

In response to the public outcry and perceived problems with the insanity defense, the Legislature enacted sweeping revisions to the Mental Health Code and the Code of Criminal Procedure. 1975 PA 179, 180. In particular, the Legislature:

(1) adopted a statutory definition of insanity based on § 4.01 of the Model Penal Code,

(2) created the guilty but mentally ill verdict,

(3) required the guilty but mentally ill verdict to be an option every time the insanity defense was raised,[8]

---

[7] *People v Ramsey*, 422 Mich 500, 511; 375 NW2d 297 (1985).

[8] Pursuant to MCL 768.29a(2), if a defendant asserts an insanity defense at trial, the jury shall be instructed regarding the following possible verdicts: "guilty, guilty but mentally ill, not guilty by reason of insanity, and not guilty with regard to the offense or offenses charged." Similarly, MCL 768.36 provides that if the defendant asserts a defense of insanity in compliance with MCL 768.20a, the defendant may be found "guilty but mentally ill" if, after trial, the trier of fact finds the defendant is guilty of an offense beyond a reasonable doubt, that the defendant has shown by a preponderance of evidence that he or she was mentally ill at the time of the commission of that offense, but that the

(4) enacted a statute preventing an individual from claiming insanity because he or she was under the influence of voluntarily consumed alcohol or drugs at the time of the alleged offense, MCL 768.21a,[9]

(5) enacted a statute requiring that the jury be instructed regarding the law before trial starts whenever an insanity defense is presented, MCL 768.29a(1),[10] and

(6) required that a defendant who wishes to pursue an insanity defense serve written notice on the court and the prosecutor not less than 30 days before trial and submit to a court-ordered examination, relating to the claim of insanity, by personnel for the Center for Forensic Psychiatry or other qualified personnel.  MCL 768.20a.

Given the vastness of these legislative substantive and procedural changes, one can see why *People v Carpenter*, 464 Mich 223, 237; 627 NW2d 276 (2001), concluded that the Legislature had established a "comprehensive statutory framework" that determines "when mental incapacity can serve as a basis for relieving one from criminal responsibility."

## B.  The Current Law Regarding Insanity

In 1994, the Legislature slightly revised the definition of legal insanity and further provided that a defendant has the burden of proving insanity by a preponderance of the evidence.   MCL 768.21a(1) and (3).[11]   Legal insanity is now a statutorily granted

---

defendant has not shown by a preponderance of the evidence that he or she was legally insane at the time of the commission of that offense.

[9] MCL 768.21a(2) currently provides:

> An individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances.

Before 1994, MCL 768.21a(2) provided, "A person who is under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his alleged offense shall not thereby be deemed to have been legally insane."

[10] This statute directs our courts to instruct on the definitions of mental illness, mental retardation, and legal insanity immediately before the commencement of testimony on insanity in a jury trial.  See CJI2d 7.9.

[11] 1994 PA 56.   In addition to placing the burden of proof on the defense, the 1994 amendment also clarified that the cognitive prong of the insanity definition also includes

affirmative defense[12] requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1).[13] And, as previously mentioned, pursuant to MCL 768.29a(2) and MCL 768.36, if a defendant asserts an insanity defense at trial, the jury must also be instructed regarding the guilty but mentally ill verdict.[14]

There are several procedural requirements that must be satisfied before a defendant can raise an insanity defense.[15] We recently summarized those requirements in *People v Toma*, 462 Mich 281, 292 n 6; 613 NW2d 694 (2000):

a defendant who "lacks substantial capacity . . . to appreciate the nature and quality . . . of his or her conduct."

Before October 1, 1994, a defendant in a criminal proceeding was presumed sane, but once any evidence of insanity was introduced, the prosecution bore the burden of establishing defendant's sanity beyond a reasonable doubt. *In re Certified Question* (*Duffy v Foltz),* 425 Mich 457; 390 NW2d 620 (1986), *People v Stephan*, 241 Mich App 482, 488-489; 616 NW2d 188 (2000).

[12] As we stated in *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984), there is no constitutional right to assert an insanity defense. In fact, a few states have eliminated the insanity defense altogether. See Idaho Code Ann 18-207(1); Mont Code Ann 46-14-102; Kan Stat Ann 22-3220; Utah Code Ann 76-2-305.

[13] As explained in *People v Goad*, 421 Mich 20; 364 NW2d 584 (1984), jurors are not to be instructed regarding the disposition of a defendant found not guilty by reason of insanity. This is because disposition involves contingencies so numerous that disposition simply cannot be predicted. *Id.* at 32. See also MCR 6.304(B).

Persons acquitted of an offense by reason of insanity may be confined and required to undergo evaluation and treatment. MCL 330.2050. As stated in *People v Webb*, 458 Mich 265, 281; 580 NW2d 884 (1998), MCL 330.2050 is

a measure to promote public safety. Persons acquitted by reason of insanity, particularly where the facts are grave, cannot be allowed simply to walk out the front door of the courthouse. The statute is clearly designed to establish a procedure by which it can be determined whether the person can safely reenter society.

[14] In *Ramsey*, 422 Mich at 514, this Court rejected the claim that the "guilty but mentally ill" statute, MCL 768.36, denied a defendant a right to a fair trial by creating an unjustified risk of a compromise verdict.

[15] It is well established that the right to assert a defense may be limited by "established rules of procedure and evidence designed to assure both fairness and reliability in the

A defendant in a felony case who wishes to interpose an insanity defense, must serve written notice on the court and the prosecutor not less than thirty days before trial and submit to a court-ordered examination, relating to the claim of insanity, by personnel for the center for forensic psychiatry or other qualified personnel. MCL 768.20a(1) and (2); MSA 28.1043(1)(1) and (2). A defendant or the prosecutor may also obtain independent psychiatric examinations. MCL 768.20a(3); MSA 28.1043(1)(3). The failure by the defendant to fully cooperate in either the court-directed or independent examinations, bars the defendant from presenting testimony relating to insanity at trial. MCL 768.20a(4); MSA 28.1043(1)(4).

As this Court noted in *People v Hayes*, 421 Mich 271, 288; 364 NW2d 635 (1984), "the Center for Forensic Psychiatry is an independent branch of the state government." According to the Michigan Department of Community Health's website, the Center for Forensic Psychiatry is a 210-bed psychiatric facility located in Ann Arbor[16] "that provides both diagnostic services to the criminal justice system and psychiatric treatment for criminal defendants adjudicated incompetent to stand trial and/or acquitted by reason of insanity."[17] The forensic center performs approximately 3,100 diagnostic evaluations each year to determine defendants' competency to stand trial[18] and insanity at the times they allegedly committed their crime. *Id.*

## V. The Statute

MCL 768.20a provides in full:

ascertainment of guilt and innocence." *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). This Court has previously held that limitations placed on raising the insanity defense, pursuant to the procedures established in MCL 768.20a, do "not unconstitutionally infringe on a defendant's right to present a defense." *Hayes*, 421 Mich at 283.

[16] The center's evaluation unit maintains satellite facilities at the Kent County Correctional Facility, Marquette County Sheriff's Department, and the Grand Traverse County Sheriff's Department for evaluation of defendants from those areas.

[17] ‹http://www.michigan.gov/mdch/1,1607,7-132-2941_4868_4896-14465--,00.html› (accessed December 1, 2008).

[18] Pursuant to MCL 330.2020(1), a defendant "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." Pursuant to MCL 330.2022(1), "[a] defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent."

(1) If a defendant in a felony case proposes to offer in his or her defense testimony to establish his or her insanity at the time of an alleged offense, the defendant shall file and serve upon the court and the prosecuting attorney a notice in writing of his or her intention to assert the defense of insanity not less than 30 days before the date set for the trial of the case, or at such other time as the court directs.

(2) Upon receipt of a notice of an intention to assert the defense of insanity, a court shall order the defendant to undergo an examination relating to his or her claim of insanity by personnel of the center for forensic psychiatry or by other qualified personnel, as applicable, for a period not to exceed 60 days from the date of the order. When the defendant is to be held in jail pending trial, the center or the other qualified personnel may perform the examination in the jail, or may notify the sheriff to transport the defendant to the center or facility used by the qualified personnel for the examination, and the sheriff shall return the defendant to the jail upon completion of the examination. When the defendant is at liberty pending trial, on bail or otherwise, the defendant shall make himself or herself available for the examination at the place and time established by the center or the other qualified personnel. If the defendant, after being notified of the place and time of the examination, fails to make himself or herself available for the examination, the court may, without a hearing, order his or her commitment to the center.

(3) The defendant may, at his or her own expense, secure an independent psychiatric evaluation by a clinician of his or her choice on the issue of his or her insanity at the time the alleged offense was committed. If the defendant is indigent, the court may, upon showing of good cause, order that the county pay for an independent psychiatric evaluation. The defendant shall notify the prosecuting attorney at least 5 days before the day scheduled for the independent evaluation that he or she intends to secure such an evaluation. The prosecuting attorney may similarly obtain independent psychiatric evaluation. A clinician secured by an indigent defendant is entitled to receive a reasonable fee as approved by the court.

(4) The defendant shall fully cooperate in his or her examination by personnel of the center for forensic psychiatry or by other qualified personnel, and by any other independent examiners for the defense and prosecution. If he or she fails to cooperate, and that failure is established to the satisfaction of the court at a hearing prior to trial, the defendant shall be barred from presenting testimony relating to his or her insanity at the trial of the case.

(5) Statements made by the defendant to personnel of the center for forensic psychiatry, to other qualified personnel, or to any independent examiner during an examination shall not be admissible or have probative value in court at the trial of the case on any issues other than his or her mental illness or insanity at the time of the alleged offense.

(6) Upon conclusion of the examination, the center for forensic psychiatry or the other qualified personnel, and any independent examiner, shall prepare a written report and shall submit the report to the prosecuting attorney and defense counsel. The report shall contain:

(a) The clinical findings of the center, the qualified personnel, or any independent examiner.

(b) The facts, in reasonable detail, upon which the findings were based.

(c) The opinion of the center or qualified personnel, and the independent examiner on the issue of the defendant's insanity at the time the alleged offense was committed and whether the defendant was mentally ill or mentally retarded at the time the alleged offense was committed.

(7) Within 10 days after the receipt of the report from the center for forensic psychiatry or from the qualified personnel, or within 10 days after the receipt of the report of an independent examiner secured by the prosecution, whichever occurs later, but not later than 5 days before the trial of the case, or at another time the court directs, the prosecuting attorney shall file and serve upon the defendant a notice of rebuttal of the defense of insanity which shall contain the names of the witnesses whom the prosecuting attorney proposes to call in rebuttal.

(8) The report of the center for forensic psychiatry, the qualified personnel, or any independent examiner may be admissible in evidence upon the stipulation of the prosecution and defense.

(9) As used in this section, "qualified personnel" means personnel meeting standards determined by the department of community health under rules promulgated pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328.

As stated in *People v Wallace*, 160 Mich App 1, 5; 408 NW2d 87 (1987), "[t]he purpose of requiring notice of intent to claim the defense of insanity is to protect the public and avoid unfair surprise to the prosecution at trial. The statute is also designed to protect the integrity of the evidence regarding an insanity defense." (Citations omitted.)

As is apparent, MCL 768.20a has nine subsections. Pursuant to subsection 1, a defendant who proposes to offer testimony to establish insanity is required to file and serve a notice to that effect. Subsection 2 provides that on receipt of such a notice, a trial court shall order the defendant's examination by the Center for Forensic Psychiatry. Pursuant to subsection 3, a defendant and the prosecutor are allowed to secure an independent psychiatric evaluation. Subsection 4 states that the defendant is required to "fully cooperate," and if a court is persuaded that the defendant is not cooperating, the defendant can be barred from presenting an insanity defense.[19] Pursuant to subsection 5, statements made by the defendant during an examination are not admissible at trial on any issue other than mental illness or insanity. Subsection 6 provides that examiners are required to prepare written reports of their clinical findings, including the reasonably detailed facts on which the findings are based and an opinion on whether the defendant was in fact insane, mentally ill, or mentally retarded at the time of the alleged crime. Pursuant to subsection 7, the prosecutor has to file and serve a notice of rebuttal of the insanity defense, within certain time limits, which notice shall contain the names of witnesses the prosecutor intends to call in rebuttal. Subsection 8 provides that an examiner's report may be admitted into evidence upon stipulation of the parties. Finally, subsection 9 defines the phrase "qualified personnel" as used in the statute.

## VI. Did the Statute Apply?

As previously indicated, defense counsel sought a court order that would have required the county sheriff to make defendant available to a psychologist for several hours beyond what normal jail visitation policies allowed in order to assist counsel in deciding whether to assert an insanity defense. The trial court held the statute applied such that defendant was not entitled to an independent evaluation until he had filed a notice of intent and had been examined at the forensic center. The Court of Appeals, however, determined that the statute simply did not apply because defense counsel had not proposed an insanity defense. Rather, he was only investigating whether to file a notice of intent.

MCL 768.20a(1) provides in pertinent part:

> If a defendant in a felony case proposes to offer in his or her defense testimony to establish his or her insanity at the time of an alleged offense, the defendant shall file and serve upon the court and the prosecuting attorney a notice in writing of his or her intention . . . .

---

[19] In *People v Hayes*, 421 Mich at 275, 288, this Court held that the preclusion sanction of subsection 4 did not unconstitutionally infringe on a defendant's right to present a defense and that the statute was not unconstitutionally vague.

The Court of Appeals analyzed the issue as follows:

> According to the plain statutory language, MCL 768.20a comes into play "[i]f a defendant in a felony case *proposes to offer* in his or her defense testimony to establish his or her insanity at the time of an alleged offense . . . ." MCL 768.20a(1) (emphasis added). Of particular relevance in this context, the word "propose" is defined as "to plan; intend," Random House Webster's College Dictionary (1997) . . . . [Emphasis in original.]

> * * *

> We cannot conclude that by requesting an independent psychological evaluation for defendant, defense counsel was "propos[ing] to offer . . . testimony to establish [defendant's] insanity at the time of an alleged offense . . . ." MCL 768.20a(1). As noted, it was not yet known whether an insanity defense would even be viable, and it would be unreasonable to deduce from counsel's mere request to investigate defendant's mental state that the defense had *solidified* "a plan or intention" to raise the insanity defense at trial.  [Emphasis added].

> * * *

> MCL 768.20a does not come into play until a defendant *definitively* "proposes to offer in his or her defense testimony to establish his or her insanity . . . ." [*Shahideh*, 277 Mich App at 115-117 (emphasis added).]

Thus, the Court of Appeals majority looked to Random House Webster's College Dictionary's definition of the word "propose."  That definition provides seven different entries.  But the Court of Appeals only cited the fifth entry, which is "to plan; intend." The panel did not cite the first definition, "to offer for consideration, acceptance, or action," the third definition, "to suggest," or the seventh entry, "to form or consider a purpose or design."

The Court of Appeals also cited the Webster's Third New International Dictionary, Unabridged Edition's first definition of the intransitive verb "propose," which is "to form or declare a plan or intention."  But the Court of Appeals did not cite the third entry for the transitive verb form: "to offer for consideration, discussion, acceptance, or adoption."

As is apparent, the Court of Appeals cited the most narrow definitions and omitted other broader definitions of the word "propose."  In *Feyz v Mercy Mem Hosp*, 475 Mich 663, 684 n 62; 719 NW2d 1 (2006), this Court noted that "because a word can have many different meanings depending on the context in which it is used, and because dictionaries

frequently contain multiple definitions of a given word, . . . it is important to determine the most pertinent definition of a word in light of its context."

The broader definition of "to suggest or consider" (combining the third and seventh definitions from Random House Webster's College Dictionary) is inconsistent with the Court of Appeals majority's analysis that a notice of intent must be filed only after a defendant has "solidified" a plan or "definitively" intends to offer the insanity defense. Thus, the question is whether the most pertinent definition of "propose" in MCL 768.20a is the broad "to suggest or consider" or the more narrow "plan or intend" used by the Court of Appeals.

As explained below, there are several reasons, textual and otherwise, that the most pertinent definition of "propose" in MCL 768.20a is the broad "to suggest or consider." First, the "to suggest or consider" interpretation is supported by the broader context of the statute. Subsections 4 through 8 contain identical reporting requirements and evidentiary restrictions, regardless of whether an examination is authorized under MCL 768.20a(2) (examination at the forensic center) or (3) (independent evaluation by a clinician of defendant's choice), as is apparent from the repeated references to both the forensic center and the independent examiner in each of those sections. The Legislature had no reason to specifically permit independent evaluations and then subject them to the requirements of subsection 4 (defendant must cooperate), 5 (statements made not admissible regarding any issue other than mental illness or insanity), 6 (written report must be filed by examiner), 7 (prosecutor may file notice of rebuttal of the insanity defense), or 8 (reports filed under subsection 6 may be admitted into evidence upon stipulation of the parties) if it had intended them to be available for investigatory purposes without the requirements of subsections 4 through 8 before the filing of a notice of intent.

Second, the broader definition of "propose" is more consistent with one of the primary purposes of the statute: "to protect the integrity of the evidence regarding an insanity defense." *Wallace,* 160 Mich App at 5. In this context, the language must mean to do everything possible to preclude the introduction of "gamed" insanity evidence or "prepping" a defendant for a forensic center examination.[20]

---

[20] Rare is the Michigan lawyer who is unaware of the "lecture" scene from *Anatomy of a Murder* (1958), by the late Justice John Voelker of the Michigan Supreme Court (using the pseudonym Robert Traver). In that novel, Lieutenant Manion shoots Barney Quill in front of a roomful of witnesses. Manion then meets his new defense attorney, and Manion blurts out a story making it plain that he committed first-degree murder. The attorney quickly stops Manion, and gives him a highly suggestive "lecture" on the defenses for murder, strongly implying that Manion's only option is an insanity defense. When the lecture ends, Manion says, "Maybe . . . maybe I was insane." He manufactures a story about blackouts and irresistible impulses, and his attorney replies, "Maybe you've

Under the broad definition of "propose," the statute becomes applicable once defense counsel considers whether the accused might have been insane when the crime was committed. This in turn leads to the filing of a notice of intent and a criminal responsibility examination by the forensic center. Having the first mental health examination performed by a neutral expert who is not beholden to the prosecution or the defense, before the defendant has perhaps been instructed on how to work the system, protects the integrity of the evidence regarding insanity. It prevents any taint that might occur if an independent examiner employed by the defense wittingly or unwittingly suggests how a defendant should tell his or her story or describe his or her mental health symptoms to a subsequent evaluator. See, e.g., *McGarty v O'Brien,* 188 F2d 151, 155-156 (CA 1, 1951).[21]

Previous decisions of this Court support the idea that all evaluations should come within the purview of MCL 768.20a. In *Carpenter*, 464 Mich at 231, this Court reiterated that there are "procedural requirements that must be satisfied before an insanity defense may be raised." *Id*. Particularly compelling is the description of these requirements:

> A defendant in a felony case who wishes to interpose an insanity defense[] must serve written notice on the court and the prosecutor not less than thirty days before trial and submit to a court-ordered examination, relating to the claim of insanity, by personnel for the center for forensic psychiatry or other qualified personnel. MCL 768.20a(1) and (2); MSA 28.1043(1)(1) and (2). A defendant or the prosecutor *may also obtain* independent psychiatric examinations. MCL 768.20a(3); MSA 28.1043(1)(3). [*Toma*, 462 Mich at 292 n 6 (emphasis added).]

The language "may also obtain" from *Toma* suggests that the independent evaluation permitted by MCL 768.20a(3) is in addition to, rather than an investigatory prelude to, the forensic center examination required by MCL 768.20a(2).

---

got something there." Traver, *Anatomy of a Murder* (New York: St. Martin's Press, 1958), pp 44-49.

[21] Dr. Barbara Kirwin has coined the phrase "designer defense" to describe a psychological defense used in an insanity plea that is carefully fabricated to fit all the pertinent facts of the case, and then tailored to individual characteristics of the defendant that might appeal to a jury—all regardless of whether any bona fide incapacitating mental illness exists. The nature of a particular designer defense is determined by what sympathy-evoking excuses are in vogue at the time of the trial. Barbara R. Kirwin, *The Mad, the Bad, and the Innocent: The Criminal Mind on Trial* (New York: Little, Brown & Company, 1997, pp 65-95).

I also note that the Court of Appeals conclusion that the statute does not apply until defense counsel has "solidified" a plan or "definitively" intends to raise the insanity defense is contrary to how our criminal justice system actually operates. As previously mentioned, the forensic center evaluates about 3,000 defendants a year for competency and criminal responsibility (i.e., insanity). Yet, the vast majority of examined defendants do not ultimately introduce the insanity defense.[22] Many, if not most, defendants who file a notice of intent pursuant to MCL 768.20a decide not to pursue an insanity defense. Indeed, I question how defense counsel could ever "solidify" or "definitively" plan on raising an insanity defense in the absence of an expert opinion, after an examination, that the defendant was insane at the time the crime was committed.[23] Defense attorneys simply do not "solidify" their plan or "definitively" decide whether to pursue an insanity defense on their client's behalf until after an expert provides an opinion that the defendant may have been insane at the time the crime was committed.

I thus conclude that the statutory term "propose" includes "suggest or consider" and, therefore, comes into play by the time a defense attorney decides to have a psychologist or psychiatrist examine his or her client. I am satisfied that this construction is consistent with the fair import of the terms, promotes justice, and effects the objects of the law. MCL 750.2.

VII. Is a Notice of Intent to Assert an Insanity Defense a Party Admission?

In an attempt to bolster its conclusion that the statute did not apply to defense counsel's motion, the Court of Appeals noted that MRPC 3.1 provides that "a lawyer must not assert an issue in any proceeding 'unless there is a basis for doing so that is not frivolous.'" *Shahideh,* 277 Mich App at 117 n 1. It then said that an attorney "would violate this ethical obligation by filing a written notice of intent to raise the insanity defense before adequately investigating the viability of such a defense and forming a sufficient basis to believe that the defense is warranted." *Id.* While I conceptually agree that it might be possible for a defense attorney to violate MRPC 3.1 by filing a notice of intent pursuant to MCL 768.20a when there is *no basis* for doing so, it must be recalled

---

[22] As is stated in the use note of CJI2d 7.9, "[f]iling a notice of intent to assert an insanity defense is *not* the same as actually asserting the defense at trial." (Emphasis in original). See, e.g., *People v Toma,* 462 Mich at 290 (defendant was interviewed by a clinical psychologist pursuant to a notice of intent, but thereafter "defendant did not raise insanity as a defense at trial").

[23] This is not surprising given that the defendant has the burden of proof with respect to an insanity defense.

that defense counsel has a constitutional duty to provide effective assistance of counsel and that this includes investigating defenses.[24]

A nonfrivolous basis for filing a notice of intent under MCL 768.20a certainly existed in this case where defense counsel knew that defendant had been diagnosed with bipolar disorder and had been prescribed psychiatric medications. Indeed, the prosecutor's willingness to stipulate a referral further suggests that a nonfrivolous basis existed in the case at bar.

In the course of responding to the prosecutor's argument that a defendant can always withdraw a notice of intent, the Court of Appeals said:

> A notice of intent to pursue the insanity defense under MCL 768.20a(1) is a party admission. MRE 801(d)(2); see also *People v McCray*, 245 Mich App 631, 635; 630 NW2d 633 (2001) (notice of alibi defense, as a party admission, is admissible for purpose of impeachment). Therefore, even if a defendant withdraws his or her initial written notice, the prosecution remain [sic] free to use the contents of the notice as impeachment evidence at trial. [*Shahideh*, 277 Mich App at 118 n 2.]

This is incorrect. A notice of intent under MCL 768.20a is not a party admission that is admissible for the purpose of impeachment. The filing of a notice is nothing more than an assertion that one intends to submit testimony that a defendant was insane when the crime was committed.[25] Indeed, as stated in *People v Martin,* 386 Mich 407, 427;

---

[24] "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See also *Avery v Prelesnik,* ___ F3d ___, 2008 WL 4977359, *1 (CA 6, 2008) (affirming that defendant "was deprived of his right to effective assistance of counsel when his attorney failed to investigate and interview potential alibi witnesses").

[25] Moreover, as for things a defendant might say while being examined, MCL 768.20a(5) provides:

> Statements made by the defendant to personnel of the center for forensic psychiatry, to other qualified personnel, or to any independent examiner during an examination shall not be admissible or have probative value in court at the trial of the case on any issues other than his or her mental illness or insanity at the time of the alleged offense.

Thus, the Legislature has expressly forbidden the admission of anything a defendant says during an examination for any issue other than mental illness or insanity. If a defendant decides not to pursue an insanity defense, after having filed a notice of intent and having been examined, thus removing defendant's sanity as an issue from the trial, anything the

192 NW2d 215 (1971), "a plea of not guilty by reason of insanity is not a plea that incriminates."

While the filing of a notice of alibi is a party admission, as explained in *McCray*, the filing of a notice of insanity is not. Unlike a notice of alibi, a notice of intent to pursue an insanity defense does not require a defendant to admit anything more than that he or she was not sane when the crime occurred.

In *McCray,* the defendant argued that his notice of alibi should be treated like statements a defendant makes to an examining psychiatrist, which are not admissible pursuant to MCL 768.20a(5) if the defendant later chooses not to pursue an insanity defense. The Court of Appeals rejected this argument because the alibi statute has no counterpart to subsection 5 of MCL 768.20a, i.e., a provision that prohibits the admission of statements made during an examination, including for purposes of impeachment.[26] Thus, the Court of Appeals in the instant case erred in relying on *McCray* for the proposition that a notice of intent to assert an insanity defense is a party admission.

For all these reasons, I conclude that if defense counsel has sufficient information to warrant a defendant's evaluation for insanity, he or she must file a notice of intent pursuant to MCL 768.20a.[27] After the defendant is first examined at the forensic center, the defendant is free to request an independent evaluation pursuant to MCL 768.20a(3). Because defendant's motion made MCL 768.20a applicable, defense counsel's failure to invoke the statute precludes a finding of error.

VIII. Effective Assistance of Counsel

After concluding that the statute did not apply, the Court of Appeals went on to hold that the trial court's denial of defendant's motion violated his constitutional right to

---

defendant said during the insanity examinations may not be admitted at trial. Hence the Court of Appeals clearly erred in stating that defendant had to give up his Fifth Amendment right against self incrimination in order to pursue an insanity defense. *Toma,* 462 Mich at 294.

[26] *McCray*, 245 Mich App at 636, citing *People v Toma,* 462 Mich at 293.

[27] I also reject the Court of Appeals remedy in this case. The Court of Appeals said: "If the psychologist and defense counsel find that there is a triable issue concerning defendant's sanity at the time of the charged offense, then the trial court shall vacate defendant's conviction and a new trial shall be held." *Shahideh,* 277 Mich App at 121-122. I reject the suggestion that whether a defendant is entitled to a new trial is subject to decision by anyone other than a judge. Only a judge can grant a new trial if it is warranted under the proper standard of review. See *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

the effective assistance of counsel because it deprived his attorney of the opportunity to investigate a potential insanity defense. *Shahideh,* 277 Mich App at 120-121.

It is true that under certain circumstances, even when counsel's performance is not intrinsically deficient, a defendant's right to the effective assistance of counsel may be denied by government action, *Bell v Cone*, 535 US 685, 696 n 3; 122 S Ct 1843; 152 L Ed 2d 914 (2002), and that a defendant's right to the effective assistance of counsel is violated in "cases in which the court or the state directly interferes with the attorney-client relationship by preventing counsel from rendering assistance." *People v Mitchell*, 454 Mich 145, 154; 560 NW2d 600 (1997).[28] However, these holdings are inapplicable to this case. The Court of Appeals analysis is deficient in several regards. First, defense counsel did investigate a potential insanity defense. This is how he learned that defendant had been diagnosed with bipolar disorder and had been prescribed psychiatric medications. Second, the trial court's refusal to allow a visit at the jail, well beyond the time normally allowed for visits, did not completely preclude further investigation. The psychologist could in fact have visited defendant in the jail for short periods within the visitation policies of the jail. Also, the psychologist presumably could have spoken with defendant on the telephone. Seen in this light, the trial court's ruling was quite limited. It did not forbid the psychologist from meeting defendant or speaking with defendant. The trial court only refused to require the sheriff to allow visits of longer duration than are allowed under existing visitation policies at the jail. I conclude that the trial court's denial of defendant's motion did not rise to the level of directly interfering with the attorney-client relationship by preventing counsel from rendering assistance.

I also note that the trial court's order certainly did not prevent defendant from obtaining an independent evaluation. The trial court's order expressly allowed such an evaluation if defendant filed a notice of intent and was examined at the forensic center first. But, as previously mentioned, after the trial court's ruling, defense counsel never filed a notice of intent, and instead chose to present a mitigation defense. Requiring defendant to pursue an insanity defense in compliance with the statute did not deny defendant his right to the effective assistance of counsel.

## IX. Conclusion

An incarcerated defendant is not entitled to a court order requiring the sheriff to make the defendant available in the jail for a period beyond that allowed by existing jail visitation policies so that the defendant may be examined by a psychologist in order to

---

[28] It is also true that a criminal defendant is denied the effective assistance of counsel by his attorney's failure to investigate and present a meritorious insanity defense, *People v Hunt*, 170 Mich App 1, 13; 427 NW2d 907 (1988), *People v Parker*, 133 Mich App 358, 363; 349 NW2d 514 (1984), *People v McDonnell*, 91 Mich App 458, 461; 283 NW2d 773 (1979), but defendant does not argue that this line of cases applies.

help defense counsel decide whether to file a notice of intent under MCL 768.20a. An incarcerated defendant has no right to an independent evaluation under MCL 768.20a until a notice of intent has been filed, and the defendant has first been examined at the forensic center. In my judgment, the statute becomes applicable as soon as defense counsel's preliminary investigation produces sufficient information for counsel to decide to have his or her client examined for insanity.

I also would hold that the trial court's denial of defendant's motion did not violate defendant's constitutional right to the effective assistance of counsel.

CORRIGAN, J., joins the statement of TAYLOR, C.J.

YOUNG, J. (*concurring*).

I concur in this Court's order reversing the Court of Appeals judgment and reinstating defendant's conviction because he waived appellate relief. I write separately to address Justice Cavanagh's dissent.

Defendant sought a court order permitting a privately retained psychologist to examine him while he was in jail for the purpose of evaluating the merits of an insanity defense. Defendant sought the order because he had previously been diagnosed as bipolar and prescribed Prozac, Xanex, and Ritalin. Defendant contended that the court order was necessary because the evaluation would take more time than permitted by ordinary jail visitation hours. The trial court denied defendant's motion, ruling that defendant must first file a notice of intent to assert an insanity defense pursuant to MCL 768.20a(1) and participate in an examination by the Center for Forensic psychiatry[29] before he could obtain an evaluation by his privately retained expert. Defendant did not pursue his insanity defense by filing a § 20a(1) notice as directed by the trial court. Instead, defendant abandoned his insanity defense in favor of a mitigation defense. Defendant's mitigation defense proved unsuccessful, as a jury convicted him of first-degree murder.

The Court of Appeals majority held that the trial court erred by denying defendant's pretrial motion and remanded for further proceedings consistent with its opinion. The prosecutor sought leave to appeal in this Court, and we have reversed the Court of Appeals judgment because defendant waived appellate relief on this issue.

As stated, I concur with this Court's order; the interpretation of MCL 768.20a(1) is moot because defendant intentionally abandoned his right to assert an insanity

---

[29] See MCL 768.20a(2).

defense[30] and, therefore, waived relief related to raising that defense on appeal.[31]  It is critical that the trial court's ruling, even if erroneous, did not prohibit defendant from pursuing an insanity defense.[32]  Investigation of an insanity defense remained fully

---

[30] See *People v Carines*, 460 Mich 750, 762 n 7 (1999), quoting  *United States v Olano*, 507 US 725, 733 (1993) (internal quotation marks omitted).

[31] See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), quoting *United States v Griffin*, 84 F3d 912, 924 (CA 7, 1996).

[32] The trial court did not violate the defendant's right to present a defense.  "There is no question that a criminal defendant has a state and federal constitutional right to present a defense."  *People v Hayes*, 421 Mich 271, 278 (1984) citing Const 1963, art 1, §§ 13, 17, 20 and US Const, Ams VI, XIV.  The protections afforded by that right were described in *Washington v Texas*, 388 US 14, 19 (1967):

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.

The United States Supreme Court has additionally observed:

> [T]he cases in which we have invoked this principle [the right to present a defense] dealt with the exclusion of evidence, see, *e.g., Crane v Kentucky,* [476 US 683 (1986)]*; Chambers v Mississippi,* 410 U.S. 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973), or the testimony of defense witnesses, see, *e.g., Webb v Texas,* 409 U.S. 95; 93 S Ct. 351, 34 L Ed 2d 330 (1972) *(per curiam); Washington v Texas,* [*supra*].  None of them involved restrictions imposed on a defendant's ability to present an affirmative defense. [*Gilmore v Taylor*, 508 US 333, 343 (1993).]

The right to present a defense has only been invoked to reverse a conviction when the defendant was completely precluded from offering relevant and material evidence or testimony on the basis of a rule or decision that was "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *United States v Scheffer*, 523 US 303, 308 (1998), quoting *Rock v Arkansas*, 483 US 44, 56 (1987).  See, e.g., *Washington*, *supra* (holding that a Texas statute that prohibited the defendant from presenting the testimony of a coparticipant who would have confessed to the charged crime violated the defendant's right to present a defense); *People v Whitfield*, 425 Mich 116, 124 n 1 (1986) (holding that barring the defendant from presenting the testimony of a medical expert violated the defendant's right to present a defense).

available to defendant. That defendant may have been erroneously deprived of an opportunity for an independent evaluation before filing a § 20a(1) notice is irrelevant in light of defendant's subsequent decision to abandon the investigation of his insanity defense. Indeed, the trial court's order expressly instructed defendant that he "has the right to full access to an evaluation by a clinician of his choosing—at the appropriate time." Thus, the trial court's order neither prohibited defendant from investigating his insanity defense nor obtaining the independent evaluation that his motion sought.

This case is not analogous to a defendant seeking to offer evidence, but being denied the opportunity by an erroneous ruling by the court. Rather, this case is more analogous to a defendant offering evidence and the trial court denying its admission but instructing the defendant that he may introduce the same evidence through another witness. In that situation, if the defendant refuses to call that alternative witness or offer the evidence through that witness, then he has abandoned his right to present that evidence to the jury and cannot obtain relief on appeal. Indeed, as this Court has instructed, defendant "may not harbor error as an appellate parachute."[33]

Justice Cavanagh suggests that defendant did not waive his insanity defense because after the trial court's ruling he had to choose between two alternatives, each with its own consequences.[34] As Justice Cavanagh explains, however, defendant *chose* not to

---

Unlike in *Washington* and *Whitfield*, the trial court's ruling here did not completely prohibit defendant from "present[ing] his own witness[] to establish a defense." *Washington*, *supra* at 19 The trial court merely required that defendant file a notice and submit to an examination at the Center for Forensic Psychiatry first. If defendant had complied, he could have presented witnesses in support of an insanity defense. Instead, defendant abandoned the defense.

Moreover, in *Hayes*, *supra* at 279, this Court recognized that "there is no constitutional right to assert an insanity defense." The Legislature is free to define the defense and place limitations and requirements on its exercise. See *Speiser v Randall*, 357 US 513, 523 (1958) ("It is of course within the power of the State to regulate procedures under which its laws are carried out . . . ."); *Leland v Oregon*, 343 US 790, 798; 72 S Ct 1002; 96 L Ed 1302 (1952) (holding Oregon's statute requiring a defendant to prove his insanity beyond a reasonable doubt was not unconstitutional); *Clark v Arizona*, 548 US 735, 748-749 (2006) (holding that Arizona's narrowed definition of insanity was not unconstitutional). I believe that the Legislature could impose the requirements that the court imposed in this case (albeit arguably erroneously). Thus, those requirements did not infringe the defendant's right to present a defense such that his waiver can be excused.

[33] *Carter*, *supra* at 214.

[34] Justice Cavanagh contends that defendant believed he had no real choice between pursuing an insanity defense and waiving his right to such defense, because the trial

submit to the Center for Forensic Psychiatry examination because he wanted to protect the secrecy of his trial strategy. Thus, defendant had a choice to continue pursuing his insanity defense and chose to abandon it as a matter of trial strategy. Waiver is not excused simply because the defendant was faced with a difficult decision and regrets the strategic choice that he made.

Defendant was fully aware that he could file a § 20a(1) notice and continue pursuing an insanity defense, but elected to abandon it in favor of a mitigation defense. Defendant cannot obtain appellate relief because his chosen defense strategy failed. Accordingly, I concur in this Court's order reinstating defendant's conviction.

CAVANAGH, J. (*dissenting*).

## I. FACTS AND PROCEDURE

In this case, defendant murdered his girlfriend under circumstances that indicate the possibility that he was suffering from a psychological disorder. After being arrested, defendant was being held in the county jail while awaiting trial. Defense counsel began investigating an insanity defense, which required a psychiatric evaluation of defendant. Accordingly, defense counsel requested a court order to mandate that defendant be allowed to be evaluated by an independent psychologist while in jail. The trial court denied defendant's request. It reasoned that, before he could obtain an independent evaluation, defendant must first file a notice of intent to assert an insanity defense pursuant to MCL 768.20a(1) and undergo an examination by the Center for Forensic Psychiatry (CFP) pursuant to MCL 768.20a(2). Defendant did not file a § 20a(1) notice because he had been unable to get a professional opinion about his sanity because the trial court precluded an in-jail evaluation. Defendant's counsel also believed that had he filed a § 20a(1) notice and later decided not to present an insanity defense, the filing could be used against his client as an admission of guilt. Accordingly, defense counsel

---

court's order would force defendant to admit guilt by submitting a notice of intent and undergoing an examination by the Center for Forensic Psychiatry, and would force defense counsel to violate the Michigan Rules of Professional Conduct if defendant later decided to not pursue the insanity defense. Yet, the trial court's order clearly stated that "any statements made by Defendant during the examination are admissible only on the issue of his mental illness or insanity." Additionally, the notice of intent must only "state, as particularly as is known to the defendant or the defendant's attorney, the name of a witness to be called in behalf of the defendant to establish" the insanity defense. MCL 768.21(1). Finally, defense counsel would not have violated the Rules of Professional Conduct by filing the notice of intent, because he had, in fact, gathered sufficient information during his investigation to lead him to conclude that an insanity defense might be a possibility.

investigated and presented a defense that was not based on insanity. A jury convicted defendant of first-degree murder.

The Court of Appeals majority held that the trial court erred in denying defendant's pretrial motion because "only a defendant who 'plan[s]' or 'intend[s]' to raise the insanity defense at trial must comply with the procedures set forth in MCL 768.20a." *People v Shahideh*, 277 Mich App 111, 116 (2007), quoting *Random House Webster's College Dictionary* (1997) for the definition of "propose." The Court of Appeals majority explained that MCL 768.20a did not apply to defendant's motion:

> A mere request to investigate and examine the viability or feasibility of a potential insanity defense is not sufficient to trigger the statute. We conclude that defendant's request for an independent psychological evaluation was not governed by MCL 768.20a because the defense had not yet "propose[d] to offer" an insanity defense in this case. [*Id*. at 117.]

The Court of Appeals majority remanded for further proceedings consistent with its opinion. It did not reach the merits of defendant's equal protection claim because its decision rested on the fact that the trial court had misinterpreted the statute.

We granted the prosecution's application for leave to appeal. We were specifically interested in interpreting the statute and evaluating the inner workings of its various subparts.[35] The majority order reverses the Court of Appeals, basing its decision on the heretofore unlitigated issue of waiver. In sum, the majority order holds that defendant waived his right to present an insanity defense.

## II. ANALYSIS

### A. WAIVER

---

[35] No justices dissented from the order granting leave to appeal and requesting briefing on:

> (a) whether MCL 768.20a governs a request by an incarcerated defendant for an independent psychiatric evaluation to determine whether an insanity defense may be available where no notice of intention to assert an insanity defense has been filed; (b) if the statute governs, whether the subsections of MCL 768.20a are to be construed seriatim, such that an independent psychiatric evaluation may not be requested under subsection 3 without first complying with subsections 1 and 2; and, (c) if the statute does not apply, whether the defendant's constitutional rights were violated by the trial court's decision to deny access to the defendant for an independent psychiatric evaluation while he was in jail. [480 Mich 1195 (2008).]

I disagree with the majority order's conclusion that defendant is precluded from appellate relief because he had waived his right to present an insanity defense. "Waiver is the intentional relinquishment of a known right." *Bailey v Jones*, 243 Mich 159, 162 (1928). In this case, defendant was being held in the county jail while awaiting trial. During this time, his attorney realized that defendant's mental illnesses and medications, coupled with his irregular behavior, indicated that he might have been legally insane when the crime was committed. Accordingly, defense counsel began investigating an insanity defense, which required a psychiatric evaluation of defendant. To accomplish this, defense counsel made a pretrial motion asking the trial court to allow an independent psychologist access to defendant while defendant was incarcerated. Defense counsel also asked for the prosecutor's stipulation for such an evaluation. In order to substantiate the need for this evaluation, defense counsel offered to present to both the prosecutor and the trial court defendant's medical records, which reflected an earlier diagnosis of bipolar disorder and applicable treatment plans, including prescriptions for psychiatric medications. The prosecutor refused to stipulate to evaluation, and the trial court wrongly applied the statute to deny defendant's request for an independent evaluation.[36]

Defense counsel was then left with the Hobson's choice of forgoing the insanity defense, for lack of investigation, or filing a notice of intent and submitting to an examination by the state-run CFP. Defense counsel did not want a CFP examination until defendant had undergone an independent evaluation because counsel wanted to protect the secrecy of his trial strategy. Defense counsel also thought that if he filed a § 20a(1) notice and submitted defendant to the CFP examination, such an action could be seen as an admission of guilt and a violation of the Michigan Rules of Professional Conduct if he later elected not to present an insanity defense. While these were incorrect conclusions, they nonetheless speak to whether defendant intentionally waived a known right. In essence, defense counsel subjectively believed that, on one hand, he could submit defendant to the CFP examination and risk his client's case and his license to practice law, or, on the other hand, he could not submit defendant to the CFP examination, abandon the nascent insanity defense for lack of an investigation, and present some other fully developed defense strategy. And, it was solely the trial court's misreading of the statute that placed defense counsel in this precarious position.[37] Forced to choose, defense counsel understandably elected to avoid the CFP examination and to present an alternative defense. This does not evince a decision to intentionally relinquish a known right. Rather, these facts reflect the opposite—defense counsel was essentially

---

[36] See Part II(B), *infra*, explaining how the trial court misconstrued the statute to preclude defendant from obtaining an independent evaluation.

[37] In fact, if the trial court had interpreted the statute correctly, this problem would have been obviated because defense counsel would have been able to secure the independent evaluation and then present the insanity defense in compliance with the statute or simply abandon it by never filing a notice of intent.

forced to comply with a misapplication of the statute or forgo investigating an insanity defense.[38] Accordingly, defendant did not waive his right to present an insanity defense, and he is entitled to appellate relief.[39]

---

[38] The majority order holds that defendant made a strategic choice to abandon an insanity defense. First, the existence of a mere *choice* does not establish waiver. Waiver requires an intentional relinquishment of a known right. This defendant did not intentionally relinquish his right to investigate an insanity defense through an independent evaluation. On the contrary, he expressly requested such an evaluation and litigated his rights in that regard. Second, even if the order were correct that the mere existence of a choice could establish a waiver, I would hold that a choice between having a statute misapplied or losing one's right to fully investigate a defense does not constitute a choice. Further, contrary to the order's assertion, defendant did not have enough information to "propose[] to offer in his . . . defense testimony to establish his . . . insanity at the time of an alleged offense," such that he should have been forced to file a notice under MCL 768.20a(1). Instead, defendant lacked that information, and he was expressly trying to gain that information (or testimony) through the independent evaluation that was wrongly denied to him. Indeed, being denied this information was the impetus for his appeal to the Court of Appeals. Thus, the order is simply wrong to suggest that defendant had enough information to make a "good faith" decision on whether to file a § 20a(1) notice. Notwithstanding the fact that "good faith" is nowhere in the statute, this defendant's choice to forgo his right to an independent evaluation was no more of a waiver of his right to investigate and present an insanity defense than a defendant's choice to confess without being given the advice of rights required by *Miranda v Arizona*, 384 US 436 (1966), constitutes a knowing and intentional waiver of his right to remain silent— especially when that defendant had previously requested to remain silent.

[39] I also believe that defendant has presented a valid equal protection claim. Defendant would have been free to obtain an independent evaluation had he been free on bond. The only reason he was not allowed to obtain such an evaluation was because he was being held in jail. I do not believe defendant waived his right to present an insanity defense; nonetheless, assuming that defendant did waive that right, such a waiver could only have occurred after defendant was treated differently under the statute than a defendant who was free on bond. It is undisputed that defendant requested an independent evaluation. Defendant was then denied that right under color of the statute. It was only after that denial that defendant allegedly waived his right to present an insanity defense. Thus, defendant's equal protection claim regarding his treatment under the statute is still viable, despite any alleged post hoc waiver, because it is that disparate treatment that undoubtedly caused any alleged waiver. In other words, if defendant would have been treated equally under the statute, the waiver issue would never have arisen. See n 38 *supra*. Thus, defendant still deserves an adjudication of his equal protection claim. And the majority order should explain its conclusion to the contrary.

Despite it being the season for surprises, I share the parties' presumed surprise in waking to see that this waiver issue controls this case. Indeed, it is truly a magical delivery that waiver presents itself now, after it being wholly absent from the parties arguments, the lower courts' decisions, and this Court's order granting leave to appeal.

## B. STATUTORY INTERPRETATION

Because defendant did not waive his rights under the statute, I now analyze the statute's application in this case, which is what we initially indicated that the entire Court would do. On that issue, I would affirm the Court of Appeals to the extent it holds that the statute does not preclude a criminal defendant from obtaining an independent psychological evaluation before delivering a § 20a(1) notice and submitting to a CFP examination.

I also must respond to Chief Justice Taylor's interpretation of the statute. He concludes that the statute requires a criminal defendant to file a notice of intent any time he merely "considers" investigating an insanity defense. This interpretation is wrong and inherently paradoxical.

In statutory interpretation, words must be understood in their grammatical context. *Herman v Berrien Co*, 481 Mich 352, 366 (2008). MCL 768.20a(1) states:

> If a defendant in a felony case proposes to offer in his or her defense testimony to establish his or her insanity at the time of an alleged offense, the defendant shall file and serve upon the court and the prosecuting attorney a notice in writing of his or her intention to assert the defense of insanity not less than 30 days before the date set for the trial of the case, or at such other time as the court directs.

A defendant must file a notice when he "proposes to offer in his or her defense testimony to establish his . . . insanity at the time of an alleged offense." Essential to a proper definition of "propose" is the object of the proposal: "to offer . . . *testimony*." This suggests that the defendant should first have testimony to offer in order to make a "proposal" pursuant to § 20a(1). A defendant who has testimony to offer has gone beyond merely "considering" the defense; such a defendant has formulated a "plan" or "intent" to pursue an insanity defense at trial.

Moreover, "the entire act must be read, and the interpretation to be given to a particular word in one section, arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Grand Rapids v Crocker*, 219 Mich 178, 182-183 (1922). MCL 768.21(1) is relevant to the scope of "propose" in § 20a(1):

> If the defendant fails to file and serve the written notice prescribed in section 20 or 20a, the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi or the insanity of the defendant. If the notice given by the defendant does not state, as particularly as is known to the defendant or the defendant's attorney, the name of a witness to be called in behalf of the defendant to establish a defense specified in section 20 or 20a, the court shall exclude the testimony of a witness which is offered by the defendant for the purpose of establishing that defense.

The second sentence of § 21(1) indicates that the Legislature did not intend to foreclose independent evaluations before the defendant has filed a § 20a(1) notice. Section 21(1) requires the defendant to identify the witness whose testimony is proposed in the § 20a(1) notice "as particularly as is known," and if the witness is not sufficiently identified, his testimony is excluded from trial. Thus, § 21(1) reinforces the conclusion that a defendant should have testimony (from a particular witness) in order to make a "proposal" pursuant to § 20a(1). If a defendant can provide "the name of a witness to be called in behalf of the defendant to establish [an insanity] defense," that defendant has likely gone beyond mere "consideration" of the defense.

Also, MCL 768.20a(2) through (7) clearly set forth a comprehensive procedure for the parties to follow *after* the defendant files a § 20a(1) notice. The procedure specific to raising an insanity defense *before* the defendant files a notice, however, is not expressly provided by statute. The procedure *after* a § 20a(1) notice is filed has no relevance to the procedure *before* a § 20a(1) notice is filed. Only the provisions addressing the content of a notice address prenotice procedure by implication. MCL 768.20a(1) and 768.21(1). Those provisions encourage defendants to have testimony to offer before filing a § 20a(1) notice, and neither provision suggests a limitation on the source of testimony. Indeed, expert testimony is a form of testimony that a defendant may "offer in his . . . defense . . . to establish his . . . insanity at the time of an alleged offense." MCL 768.20a(1). Thus, I do not believe that the Legislature intended to foreclose independent evaluations before a defendant has filed a § 20a(1) notice.

In this case, at the time of his motion, defendant was not offering testimony. Instead, his motion sought to potentially obtain "testimony to establish his . . . insanity at the time of [the] alleged offense." Accordingly, I believe that the Court of Appeals correctly held that the trial court erred and defendant was not prohibited under the statute from obtaining some corroboration from an independent evaluation before filing a notice of intent pursuant to § 20a(1).

Chief Justice Taylor's contrary, broad interpretation of "propose" would foreclose a defendant from investigating an insanity defense before filing a § 20a(1) notice. But the chief justice's own statement contradicts that very understanding of the statute. The chief justice states: "The psychologist could in fact have visited defendant in the jail for

short periods within the visitation policies of the jail." It makes no sense that the chief justice would say that a defendant could not obtain an independent evaluation before filing a notice of intent, but then also say that defendant would be free to meet with an independent evaluator. If a defendant intends to meet with a psychologist for an independent evaluation, whether within jail visitation hours or while free on bond, certainly that defendant has "considered" offering testimony to establish insanity as defined by the chief justice. Thus, the chief justice's rule contradicts itself as it applies to this case.

Further, the chief justice's interpretation lacks foresight by failing to recognize that, under it, all future defendants are precluded from proffering insanity defenses if they merely contemplate seeking an independent psychiatric evaluation before filing a § 20a(1) notice. Noncompliance with the statute precludes use of the insanity defense. *People v Hayes*, 421 Mich 271 (1984). As noted, the chief justice would allow the instant defendant to meet with an independent psychologist before filing a notice, but he would preclude that meeting if it were seen as defendant "considering" presenting an insanity defense, which would then result in him losing any possibility of presenting an insanity defense under *Hayes*. Taken to its logical end, the chief justice's interpretation of the statute would apply *Hayes* to preclude any insanity defense to a defendant whose attorney simply sat alone in his office and contemplated, or studied, an insanity defense before filing a § 20a(1) notice. The Legislature could not have intended this illogical result. But this is the illogical interpretation that the trial court applied in this case. Therefore, defendant was wrongly denied an independent evaluation.

## III. CONCLUSION

The Court of Appeals was correct to conclude that the trial court misconstrued the statute. But, that Court granted an inappropriate remedy by allowing the defendant and his independent psychologist to unilaterally decide if a new trial was necessary. Instead, I would order that the following progressive steps be taken: (1) remand the case to allow defendant the opportunity to obtain an independent evaluation; (2) if, after the evaluation, defense counsel maintains that he would have gone forward with the insanity defense, then defendant must comply with the statute's provisions with respect to filing a § 20a(1) notice and submitting to a CFP examination; (3) then, the trial court must conduct an

evidentiary hearing to consider the insanity evidence that each side would have presented at trial; and (4) the trial court should then rule on the applicability of the harmless error rule, assuming that defendant would have been able to present his insanity evidence.[40]

WEAVER and KELLY, JJ., join the statement of CAVANAGH, J.

---

[40] The trial court may also have violated defendant's constitutional right to present a defense. Criminal defendants have a constitutional right to present a defense. *Hayes, supra* at 278. Under MCL 768.20a, the Legislature has given defendants in Michigan the opportunity to present an insanity defense. A state rule may not impinge on the defendant's right to present a defense by arbitrarily limiting defense strategies or arguments. *Washington v Texas*, 388 US 14, 22 (1967). In this case, the statute was wrongly applied to deny defendant his right to have an initial independent evaluation. Accordingly, I am not convinced that the trial court in this case did not unconstitutionally infringe defendant's right to present a defense by arbitrarily affecting his defense strategy by misapplying the statute. Nonetheless, I do not reach this issue because I believe that defendant is entitled to relief on his statutory claim of error.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 29, 2008

*Corbin R. Davis*
Clerk