# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ABREY ARMON WILLIS,

        Defendant-Appellant.

UNPUBLISHED
January 27, 2015

No. 318341
Washtenaw Circuit Court
LC No. 12-001353-FH

---

Before: SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his conviction and sentence for aggravated stalking, MCL 750.411i. For the reasons set forth below, we affirm.

Defendant met and moved in with complainant in August 2011. Complainant testified that their relationship was often troubled. She stated that, at one point, defendant wrote the words "bitch" and "whore" on her walls and that he severely beat her on more than one occasion. Defendant once threatened to hit complainant in the stomach when she was pregnant and both she and defendant believed the child to be defendant's. In February 2012, complainant escaped her home and found refuge in a shelter for victims of domestic violence. The next month, she obtained a personal protection order (PPO) prohibiting defendant from contacting her or communicating with her via mail or telephone.

From February 2012 through July 2012, defendant was incarcerated for domestic assault. In spite of complainant's PPO, defendant sent her letters and called her cellular telephone from jail. Complainant testified that she felt threatened by this communication because defendant stated that he wanted to return to her house and remain in her life. Within minutes of his release from jail in July 2012, defendant called complainant and as a result was arrested for violating the PPO. In October 2012, defendant waited across the street while his friend attempted to serve complainant with papers to have the PPO removed. Defendant was then arrested on a felony warrant for aggravated stalking.

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence to support his conviction for aggravated stalking.[1]

> In ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the trier of fact's verdict. [*People v Strickland*, 293 Mich App 393, 399; 810 NW2d 660 (2011) (quotation marks and brackets omitted).]

"Aggravated stalking consists of the crime of 'stalking,' MCL 750.411h(1)(d), and the presence of an aggravating circumstance specific in MCL 750.411i(2)." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002). "Stalking" is defined as "a willful course of conduct involving repeated or continuing *harassment* of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e) (emphasis added). "Harassment" is defined as "conduct directed toward a victim that includes . . . repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411i(1)(d). Emotional distress is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411i(1)(c). MCL 750.411i(2)(a) provides that an aggravating circumstance exists where "[a]t least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order[.]" Defendant specifically argues that there was insufficient evidence that (1) his actions would have caused a reasonable person to suffer emotional distress and (2) he engaged in willful harassment.

Defendant asserts that because there were no direct threats or harsh words directed at complainant contained in his communications made in violation of the PPO, i.e., his letters and phone calls, no reasonable person could have felt threatened by them. We disagree. There was a history of violence between defendant and complainant—he had previously severely beaten her on more than one occasion, threatened to punch her in the stomach when she was pregnant, and written vulgar insults on her wall. In response, complainant obtained a PPO against defendant and sought to cease all contact with him. Given this history, a rational jury could conclude that a reasonable person would feel harassed and emotionally distressed by receiving repeated communication from defendant, regardless of whether the substance of this communication was inherently threatening.

---

[1] Whether a defendant's conviction was supported by sufficient evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).

Defendant next argues that the language of the relevant statutes required the prosecution to prove that defendant acted with the purpose of harassing complainant. Defendant phrases this argument under the guise of a "specific intent" requirement to prove aggravated stalking. Defendant is correct that stalking is a specific intent crime, i.e., it requires "a *willful* course of conduct involving repeated or continuing harassment . . . ." MCL 750.411i(1)(e) (emphasis added). However, there is no indication that defendant did not willfully and repeatedly contact complainant in violation of the PPO. Defendant is incorrect in his assertion that stalking requires that his actions have been intended to cause harassment. The requirement to establish "a willful course of conduct" is designed to exclude unintended and innocent contact between a defendant and a complainant, and is not a requirement that the prosecution establish that a defendant subjectively intended to harass by virtue of his contact. In any event, even if defendant's argument was correct, he was aware of the PPO and, therefore, complainant's desire to cease all contact with him, rendering his attempts to contact her harassing. The jury was also properly instructed on the elements of aggravated stalking and, viewing the evidence in the light most favorable to the prosecution, found defendant guilty of aggravated stalking on the basis of sufficient evidence.[2]

## II. PROSECUTORIAL MISCONDUCT

Defendant alleges seven instances of prosecutorial misconduct.[3] "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. We agree with defendant that one of the challenged statements was improper; but, we conclude that it does not require reversal.

Defendant argues that during cross-examination, the prosecution asked defendant about three irrelevant and prejudicial incidents, which elicited irrelevant and inflammatory testimony. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "All relevant evidence is admissible. . . . Evidence which is not relevant is not admissible." MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. "Evidence is unfairly prejudicial when it presents a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Brown,* 294 Mich App 377, 383-384; 811 NW2d 531 (2011).

---

[2] Defendant does not raise a constitutional vagueness challenge in his "specific intent" argument; even if he did, that argument has been rejected by this Court. *People v White*, 212 Mich App 298, 309-315; 536 NW2d 876 (1995).

[3] Defendant did not object to these instances at trial, rendering his claims unpreserved and limiting our review to plain error affecting substantial rights. *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010).

First, defendant challenges the prosecution's elicitation of his testimony regarding the incident in which he wrote "bitch" and "whore" on complainant's apartment walls:

> *Q*. What did you do to her property?
>
> *A*. I didn't do anything to her property.
>
> *Q*. You didn't punch any holes in her wall? You didn't destroy the inside of her house at all?
>
> *A*. No, she - - she destroyed her home.
>
> *Q*. She destroyed her own home?
>
> *A*. Yes, ma'am. She busted her plates, she busted her pot lids –
>
> *Q*. How about the - - how about the insults that were spray painted on the walls, the whore and bitch that were spray painted on her walls?
>
> *A*. That was - - that was chalk actually from my kids.
>
> *Q*. Oh, that was somebody else, that wasn't you?
>
> *A*. No, that was me. That was chalk though. It wasn't spray paint, it was chalk.

The prosecution asked defendant about his writing "bitch" and "whore" on complainant's wall to contradict defendant's testimony that he did not do anything to her property. This was relevant and admissible, MRE 401, MRE 402, to show that complainant had a reason to feel threatened by defendant, which relates to an element of stalking. MCL 750.411i(1)(e). While defendant argues it was inflammatory, he has not shown that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. MRE 403. Regardless, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999) (citation omitted). Thus, the prosecutor did not commit misconduct in eliciting the challenged evidence and there was no plain error.

Second, defendant challenges testimony regarding a lie he told to a friend during a telephone call from jail:

> *Q*. Well, you received in the jail this violation - - this PPO, right? And the boxes checked are that you are not allowed to appear at her workplace or residence, contact her by phone, place an object or deliver an object to the property owned, leased, or occupied by the petitioner. You're not to enter onto her property. You're not allowed to approach her. You're not to send her mail or other communication. That's all right here in this order, isn't it?
>
> *A*. Yes, ma'am. My attorney - -

-4-

*Q.* And you received this order, didn't you?

*A.* And then a week afterwards - -

*Q.* You received this order - - my question is did you receive the order?

*A.* Yes, ma'am.

* * *

*Q.* And you're sitting here and you'd like the jury to believe this. You'd like the jury to believe what you're - - what you're saying; is that correct?

*A.* I have not lied about anything sitting in this chair . . . .

*Q.* Well, how about the fact that when you were on this - - this phone call on November 28th, you lied to that person you were talking to about the PPO, right? You told them that you didn't know that the PPO was in place when you were writing the letters.

*A.* I didn't. In February I did not know the PPO is in violation.

*Q.* Well, these letters are all the way through May, aren't they?

*A.* No, after that point, I did. After that point, but - -

*Q.* So you lied to your friend on this tape, right?

*A.* No, I didn't.

*Q.* You didn't lie?

*A.* No ma'am, I didn't.

*Q.* You heard yourself on this tape say I was - - when I was writing the letters, I didn't know the PPO was in place, and that's a lie, isn't it?

*A.* I didn't - - no ma'am. I did - - when I wrote the first letter. Then I was unaware that the PPO was in place.

The prosecution asked defendant about his lie to a friend over the telephone for the purpose of impeaching defendant's credibility by showing that the statement to his friend contradicted what defendant said earlier about receiving the PPO. "Evidence bearing on a witness's credibility is always relevant." *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014) (citation omitted). In this instance, the prosecutor merely elicited relevant testimony regarding defendant's credibility—the fact that he lied in a telephone call. This was not misconduct and there was no plain error.

Third, defendant challenges the prosecution's questioning regarding whether defendant disliked the police:

> *Q.* You had no intention of calling the police that night that you left the jail and went over to [complainant]'s house, did you?
>
> *A.* Yes, I did.
>
> *Q.* You had no intention of it?
>
> *A.* Yes, ma'am. I did have intention of calling the police.
>
> *Q.* You did have intention of it?
>
> *A.* I did call the police actually.
>
> *Q.* Only after you realized she was on the phone with the police, isn't that right?
>
> *A.* Because I was unsure of her - -
>
> *Q.* That's a yes or no question.
>
> *A.* I'm sorry?
>
> *Q.* You did not call the police until after you realized she was on the - - on the phone with the police; is that right?
>
> *A.* Yes, ma'am.
>
> *Q.* And you don't like the police, do you? So you don't want to call them and talk to them?
>
> *A.* I'm not - - I'm not very fond of the police. I've had my incidents where the police have harassed me and treated me very vulgar.

It appears that the prosecution asked defendant "[Y]ou don't like the police, do you?" for the purpose of showing that defendant did not intend to call the police before going to complainant's house to retrieve his belongings. This was relevant to show that defendant did not intend to comply with the PPO and to contradict defendant's statement that he did intend to call the police. It is not prosecutorial misconduct to point out inconsistencies in a defendant's theory of the case. Here, the prosecutor properly challenged defendant's theory that he was taking appropriate steps to obtain his belongings from complainant's apartment and there was no plain error.

Fourth, defendant challenges the prosecution's closing argument referring to defendant's letter stating that no white man in a robe could keep him away from her. "A prosecutor . . . is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case . . . ." *Dobek*, 274 Mich App at 66 (citations omitted). Complainant testified

to the existence of the letter in question containing the challenged statement. Since the existence of this letter was in evidence, the prosecution was free to argue it in its closing argument and there was no plain error.

Fifth, defendant argues that the prosecution injected facts not in evidence in its closing argument. "Generally, [p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks omitted). "[T]he prosecutor may comment upon the testimony and draw inferences from it and may argue that a witness, including the defendant, is not worthy of belief." *People v Buckley*, 424 Mich 1, 14-15; 378 NW2d 432 (1985). We agree with defendant the prosecution argued a fact not in evidence when it told the jury that letters such as those that defendant sent to complainant were "a common thing we see in batterers." There is no evidence in the record to support this statement. However, defendant has not shown that this plain error affected his substantial rights. *People v Carines*, 460 Mich 750, 763-765; 597 NW2d 130 (1999). The trial court instructed the jury that the lawyers' statements were not evidence. Jurors are presumed to follow the court's instructions and instructions are presumed to cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Moreover, as discussed earlier, there was sufficient evidence to convict defendant independent of the prosecution's improper remark; accordingly, defendant cannot establish that the remark affected the outcome of trial and, thus, is not entitled to reversal. *Carines*, 460 Mich at 763-764.

Sixth, defendant argues that the prosecution denigrated the defense offered by defendant and defense counsel. "A prosecutor cannot personally attack the defendant's trial attorney because this type of attack can infringe upon the defendant's presumption of innocence." *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996). However, we do not review the prosecution's remarks in a vacuum. *Id.* at 608. Rather, we review the remarks in context. *Id.* "[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Id.* Further, the prosecution does not impermissibly denigrate the defense merely by using "colorful rhetoric." *People v Fyda*, 288 Mich App 446, 462; 793 NW2d 712 (2010).

Defendant argues that the prosecution denigrated the defense and defense counsel when it stated the following in its closing argument:

> One of the things that I found to be the most frustrating were all these questions of the defendant, have you called her recently, have you talked to her recently, when was the last time you talked to her? Who cares. That's not part of the element. What's part of the elements are that he was stalking her and he did it in an aggravated fashion. He did it and he caused her fear.

> So if I were here on a murder case and I - - and I said well, you haven't murdered anybody since last July, have you? Isn't that okay? It's like last July you murdered somebody but, you know. Or how about a home invasion? Well have you broken into any houses since last October? I mean, that's really offensive. Really offensive that, oh, it's a - - what is that, it's okay what he put her through and how she feels about it? Because maybe finally he has complied with the Court order at some point? It doesn't negate his criminal behavior.

-7-

These statements by the prosecution concerned the following testimony from defendant on redirect examination:

> *Q*. And once you had got your stuff back, you didn't have any more contact with her, did you?

> *A*. No, sir. Not at all.

> *Q*. Did she ever get hurt or injured or threatened or anything after you went to jail by you?

> *A*. No, sir. Not by me or anyone that I know.

> *Q*. Now, you're not a lawyer, right?

> *A*. No, sir. I'm not.

> *Q*. And on the night that you went over to her house after getting out of jail, you did talk to the sheriff's department 911 operator?

> *A*. Yes, sir. I did.

> *Q*. And you made an effort to comply with the law?

> *A*. Yes, sir. I did.

> *Q*. Okay. And after finding out that - - that that wasn't good enough, you ceased all contact with her, right?

> *A*. Yes, sir. I did.

When reviewed in context, the prosecution's remarks at issue were in response to defendant's testimony that he had not contacted complainant since he was arrested on October 6, 2012. Defense counsel asked defendant questions during direct examination regarding whether he had contacted complainant since his arrest and, in its closing argument, the prosecution stated that it was irrelevant whether or not defendant contacted her after this time. This is not an instance of the prosecution accusing defense counsel of intentionally trying to mislead the jury. See *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001). The prosecution also did not impermissibly denigrate the defense merely by using colorful rhetoric. *Fyda*, 288 Mich App at 462. Rather, the prosecution's remarks were in response to defendant's testimony that he did not harass or threaten complainant after the October 2012 arrest and so do not rise to an error requiring reversal. *Kennebrew*, 220 Mich App at 608. In any event, the trial court instructed the jury that the lawyers' statements were not evidence, thus curing any error alleged by defendant. *Abraham*, 256 Mich App at 279.

Seventh, defendant argues that the prosecution misstated the law. "Generally, [p]rosecutors are accorded great latitude regarding their arguments and conduct." *Bahoda*, 448 Mich at 282 (quotation marks omitted). Even when the prosecution misstates the law, proper

jury instructions are presumed to cure most errors because jurors are presumed to follow those instructions. *People v Mesik (On Recon)*, 285 Mich App 535, 542; 775 NW2d 857 (2009). In *Abraham*, 256 Mich App at 275, the prosecution told the jury that the victim deserved justice regardless of whether the defendant was the one whose gun killed the victim. We determined that even though this was a misstatement of the law, this error did not require reversal because the trial court's jury instructions "likely cured any prejudice resulting from th[e] statement." *Id.* at 276. Specifically, the trial court had instructed the jury that the attorney's arguments were not evidence and that conviction required proof that the defendant was the one who killed the victim. *Id.*

The prosecution said the following in its closing argument: "When we move on to our second and third elements that a reasonable person would suffer emotional distress and that [complainant] suffered emotional distress. It's important to know who is this reasonable person. The reasonable person is someone similarly situated to [complainant]." Despite the prosecution's statement, the trial court instructed the jury as follows: "Second, that the contact would cause a reasonable individual to suffer emotional distress. . . . . Fourth, that the contact would cause a reasonable individual to feel terrorized, and/or frightened, and/or intimidated, and/or threatened, and/or harassed, and/or molested." These instructions correctly stated the law regarding stalking, MCL 750.411i, and, therefore, cured any prejudice this statement may have caused defendant. See *Abraham*, 256 Mich App at 276.

In sum, although the prosecution made an improper remark, we conclude that defendant is not entitled to relief on the grounds of prosecutorial misconduct.

## III. SENTENCING

Defendant next argues that the trial court erred by scoring offense variable (OV) 10, MCL 777.40, at 10 points. However, even if OV 10 were scored at zero, defendant's applicable sentencing guidelines range would not be altered and, therefore, he would not be entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Accordingly, we decline to address the issue. *Id.*

## IV. CRIMINAL RESPONSIBILITY HEARING

Defendant argues that the trial court abused its discretion in denying his motion for a criminal responsibility hearing—specifically, a psychiatric investigation for purposes of presenting an insanity defense. We disagree. "[W]aiver is the intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 762 n 7. "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). If a defendant intends to offer testimony to establish his insanity at the time of the offense, the defendant must file and serve upon the court and prosecuting attorney written notice of his intention to assert such a defense not fewer than 30 days before the date set for the trial. MCL 768.20a(1). Our Supreme Court has held that a defendant who failed to assert his right to a hearing in preparation for an insanity defense under MCL 768.20a, when he knew the right existed, waived that right and could not obtain appellate relief. *People v Shahideh*, 482 Mich 1156, 1156; 758 NW2d 536 (2008). Here, defendant knew about his right to an insanity defense

before the trial but did not move to assert that right until his sentencing hearing. Therefore, he failed to give timely notice under MCL 768.20a(1) and waived his right to do so. *Shahideh*, 482 Mich at 1156. This waiver extinguished any error, and defendant is not entitled to relief. *Id.*

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his trial counsel was ineffective for failing to file a pretrial motion for a psychiatric investigation for the purpose of presenting an insanity defense, failing to impeach complainant and/or Officer Dennis Marra for lying on the witness stand, and failing to object to the prosecution's repeated references to defendant's prior domestic violence cases.[4]

The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039, 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id.*

First, defendant argues ineffective assistance of counsel where counsel failed to file a pretrial motion for a hearing on defendant's psychiatric status for purposes of presenting an insanity defense, though defendant brought the issue to counsel's attention before trial. Legal insanity is an affirmative defense asserting that the defendant was legally insane when committing the offense such that he could not appreciate the nature of his conduct or could not conform his conduct to the requirements of law. MCL 768.21a(1). There is no evidence on the record that defendant lacked the capacity to appreciate the wrongfulness of his actions or lacked ability to conform his conduct to law at the time of the offense. Therefore, defendant has not established a factual predicate for his claim that defense counsel should have moved for a psychiatric hearing. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Moreover, the evidence indicates that defendant knew what he was doing was wrong, and, accordingly, he has not shown that raising an insanity defense would have made a difference in the outcome of the trial. Because defendant did show that defense counsel's performance in failing to move for a criminal responsibility hearing fell below an objective standard of reasonableness and did not show that such performance was prejudicial, defense counsel was not ineffective in failing to file the motion.

Second, defendant argues ineffective assistance of counsel where counsel did not impeach Officer Marra or complainant for "lying" on the stand. However, it is not necessary for

---

[4] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

defense counsel to attack a witness's credibility in every possible manner. *People v Traylor*, 245 Mich App 460, 465; 628 NW2d 120 (2001). Additionally, we will not second-guess with the benefit of hindsight counsel's decisions about what evidence to present. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Though Marra did make contradictory statements at the preliminary examination and at trial regarding one of defendant's letters to complainant, defendant has offered no rationale as to how this alleged failure fell below an objective standard of reasonableness. Even if defense counsel had impeached Marra on this matter, complainant herself testified to the existence of the letter. Thus, defense counsel's decision not to impeach Marra was presumably a permissible trial strategy, not error. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Moreover, even if counsel's performance was objectively unreasonable, defendant has not shown that defense counsel's failure to impeach Marra was prejudicial. In light of all the evidence indicating that defendant knew he was prohibited from contacting complainant, we cannot conclude that impeaching Marra on this one point would have made a difference in the outcome of the trial.

Third, defendant argues that counsel failed to impeach complainant's testimony that she did not answer any of defendant's telephone calls, though there were recordings of her accepting calls. Additionally, defendant argues that counsel failed to impeach complainant with her crimes of dishonesty. While complainant did answer at least one of defendant's calls, defendant has not offered any explanation or rationalization to support that defense counsel's failure to impeach her in this regard fell below an objective standard of reasonableness. The recorded telephone calls were played for the trial court and the jury was already aware that complainant answered defendant's call on July 30, 2012. Therefore, we find that defense counsel's failure was not objectively unreasonable. Moreover, even if defense counsel's conduct fell below an objective standard of reasonableness, the error was not prejudicial. Defendant fails to give any indication as to what crimes of dishonesty complainant allegedly committed. Since defendant failed to establish a predicate for his claim that defense counsel could have impeached complainant with crimes of dishonesty, reversal is not warranted.

Finally, defendant argues that counsel was ineffective in failing to object to the evidence of defendant's prior acts. The prosecution was permitted to submit evidence regarding defendant's prior domestic violence under MCL 768.27b. Defendant does not argue the evidence was not relevant under MRE 402, unfairly prejudicial under MRE 403, or that the prosecution failed to comply with MCL 768.27b. Therefore, there is no showing that counsel erred in failing to object to admission of this evidence, nor has defendant shown such error to be prejudicial. *Riley*, 468 Mich at 142 (counsel is not required to make meritless motions). In sum, defendant has not established that he is entitled to relief on any of his claims of ineffective assistance of counsel.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause